# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **RONALD BERNSTEIN,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:20-CV-1186-RP** |
| | § | |
| **JEFFREY SNYDER, JEFF'S** | § | |
| **RESURRECTIONS, LLC, and** | § | |
| **UNKNOWN PARTIES,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE ROBERT PITMAN**
**        UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants Jeffrey Snyder and Jeff's Resurrections, LLC's Motion for

Summary Judgment, filed July 25, 2022 (Dkt. 58); Plaintiff's Response, filed August 11, 2022

(Dkt. 60);[1] and Defendants' Reply, filed August 17, 2022 (Dkt. 62). By Text Order entered on

October 17, 2022, the District Court referred the motion to this Magistrate Judge for report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and

Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western

District of Texas, as amended ("Local Rules").

## I.   Background

Plaintiff Ronald Bernstein owns a "rare and classic" 1994 Jaguar XJ-220 ("Vehicle").[2] Dkt. 1

(Complaint) ¶ 4; Dkt. 60 at 2. Defendant Jeffrey Snyder owns Jeff's Resurrections, LLC, a Texas

limited liability company specializing in restoring classic and antique automobiles. Plaintiff sues

---

[1] Plaintiff filed his response on August 11, 2022, two days after the response deadline under Local Rule CV-7(d)(2). By Text Order entered August 29, 2022, the District Court granted Plaintiff's Motion to Extend Time to Respond to Defendants' Motion for Summary Judgment.

[2] Plaintiff purchased the car "in 1999 or 2000" for $275,000. Dkt. 60 at 2.

Snyder and Jeff's Resurrections (collectively, "Defendants") for claims arising out of Defendants' maintenance work on the Vehicle.

Plaintiff alleges that Snyder approached him at an auction in Phoenix, Arizona and offered to perform mechanical and cosmetic work on the Vehicle for $20,000 to $30,000, including parts and labor. *Id.* ¶ 8. Plaintiff alleges that he accepted the offer and, on January 23, 2011, Defendants took possession of the Vehicle and transported it from Arizona to Texas. *Id.* ¶¶ 8, 21. Plaintiff alleges that he made an initial down payment of $17,000 on May 16, 2013, and subsequently paid all invoices. *Id.* ¶ 13.

Four years later, on June 27, 2017, Defendants informed Plaintiff that a sleeve on one of the cylinders in the engine needed to be replaced, and that the work should be performed by Don Law Racing, LLC, an automobile restoration company located in England. *Id.* ¶ 14. Plaintiff alleges that Defendants then transported the Vehicle's engine to Don Law Racing in England without his permission and "authorized Don Law Racing to perform a complete rebuild of the engine." *Id.* ¶ 15. Plaintiff alleges that the outstanding balance for the engine rebuild is approximately £29,750. *Id.* The engine remains in England "and will not be released until such time as the expenses for the rebuild have been satisfied." *Id.* ¶ 16. Plaintiff alleges that he has satisfied the outstanding balance to Don Law Racing, but Defendants have "refused to acknowledge or satisfy the expenses incurred with Don Law Racing." *Id.* ¶ 17.

Plaintiff alleges that he discovered through a copy of the estimate obtained from Don Law Racing that "the condition of the engine was in a dilapidated state at the time it was received by Don Law Racing LLC and it was due to the workmanship involved in the placing of the new belts and hoses." *Id.* ¶ 18. Plaintiff further alleges that Defendants now claim to be owed additional funds and have refused to return the Vehicle to Plaintiff without that payment. *Id.* ¶ 19. Plaintiff

2

contends that when he "finally got his car in 2021 from Jeff Snyder and Jeff's Resurrection it was no longer a car. Rather, after 10 years, it was in boxes and in parts." Dkt. 60 at 2.

Plaintiff filed suit against Defendants in the United States District Court for the District of Arizona based on diversity of citizenship under 28 U.S.C. § 1332(a). In his Complaint, Plaintiff alleges that Defendants breached the contract by "failing to safeguard the vehicle" and "failing to perform the work [they] had agreed to perform." Dkt. 1 ¶¶ 31, 32. Plaintiff further alleges that Defendants "negligently performed mechanical work" and "negligently maintained the vehicle while in its possession." *Id.* ¶¶ 35, 36. Plaintiff asserts claims for breach of contract, negligence, and replevin. He also seeks compensatory damages, an award of possession of the Vehicle free and clear of any claims, and attorneys' fees and costs.

In their Answer, Defendants state that "they agreed to perform a mechanical service as parts became available and leak inspection of Plaintiff's XJ-220 Jaguar and that upon completion of the mechanical service, Defendants would perform an evaluation of cosmetic issues." Dkt. 23 (Defendants' Answer to Complaint) ¶ 8. Defendants state that "an inspection of the vehicle took place in 2012," which involved "starting the engine briefly and observing the presence of a pre-existing coolant leak." *Id.* ¶ 8. Defendants admit that, some six years after taking possession of the Vehicle, they determined that one or more cylinder sleeves of the engine needed to be replaced, told Plaintiff that the engine repair should be performed by Don Law Racing, and arranged to transport the engine to England, but deny that they are responsible for satisfying the expenses incurred by Don Law Racing. *Id.* ¶¶ 14-16, 17. Defendants admit that "all invoices for work performed by Defendants have been satisfied," but allege that they paid some $2,500 in duties and shipping charges so Plaintiff's agent could take receipt of the engine on arrival. *Id.* ¶ 13.

Defendants also state that they "loaned Plaintiff's agent an engine box worth approximately $800 which the agent promised to return but has not done so." *Id.*

Defendants moved to dismiss Plaintiff's lawsuit for lack of personal jurisdiction and improper venue or, in the alternative, asked the Court to transfer it to the Western District of Texas. Dkt. 13. The District Court for the District of Arizona then transferred the case to this District. Dkt. 17.

Defendants now move for summary judgment on all Plaintiff's claims under Rule 56(a). Defendants contend that Plaintiff has not produced sufficient evidence to support his claims. Defendants also argue that Plaintiff's claims against Snyder fail as a matter of law because he cannot be held personally liable without evidence that he acted outside his capacity as a member/manager of Jeff's Resurrection.

## II.   Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus cannot defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.*

The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.  Analysis

Defendants argue that the Court should grant summary judgment on Plaintiff's negligence and breach of contract claims because Plaintiff has offered no evidence to support an award of damages. For Plaintiff's replevin claim, Defendants contend that they are entitled to summary judgment because it is undisputed that the Vehicle is in possession of Plaintiff's designated expert and Plaintiff has no evidence that Defendants still possess any parts. Plaintiff responds that there was a bailment contract between the parties, establishing a rebuttable presumption of negligence related to damage to the Vehicle while it was in Defendants' possession, and that Defendants breached the bailment contract by not performing repairs or returning the Vehicle.

## A. Negligence

The Court first considers whether Plaintiff is entitled to a rebuttable presumption of negligence based on the existence of a bailment relationship between the parties.

### 1. Bailment Relationship

Plaintiff asserts that a bailment relationship was created when Defendants took possession of the Vehicle, giving rise to a rebuttable presumption of negligence regarding damage to it. Defendants respond that bailment does not apply because Defendants have provided evidence that the Vehicle was not in good condition when they took possession of it and Plaintiff offers no evidence that they damaged the Vehicle.

Under Texas law, a bailor-bailee relationship requires: (1) delivery of personal property from one person to another for a specific purpose; (2) acceptance by the transferee of such delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that property will be returned to the transferor. *United States v. $500,000.00 in U.S. Currency*, 591 F.3d 402, 405 (5th Cir. 2009) (citing *Sears Roebuck & Co. v. Wilson*, 963 S.W.2d 166, 168-69 (Tex. App.—Fort Worth 1998, no pet.)). A bailment relationship does not create a specific cause of action, but allows the bailor to bring contract or tort claims, depending on the facts of the case and the type of action the plaintiff chooses to assert. *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 921 F. Supp. 2d 697, 728 (S.D. Tex. 2013) (citing *Int'l Freight Forwarding, Inc. v. Am. Flange*, 993 S.W.2d 262, 269 (Tex. App.—San Antonio 1999, no pet.)). Common law liability of a bailee to a bailor is limited to the consequence of the bailee's fault or negligence, although this liability may be enlarged to place a greater risk on the bailee by agreement of the parties. *N. Marine Underwriters, Ltd. v. FBI Exp., Inc.*, 697 F. Supp. 2d 695, 706 (S.D. Tex. 2009) (citing *McKenzie Equip. Co. v. Hess Oil & Chem. Corp.*, 451 S.W.2d 230, 230 (Tex. 1970)).

"In a bailment for mutual benefit, a rebuttable presumption of negligence and a prima facie case of liability is established by a bailor against the bailee upon proof that the bailed chattel was not returned." *Buchanan v. Byrd*, 519 S.W.2d 841, 843 (Tex. 1975). A bailor can make a prima facie showing of negligence by presenting evidence that (1) a bailment relationship existed, (2) the goods were delivered to the bailee in good condition, and (3) the goods were returned damaged. *Crompton Greaves*, 921 F. Supp. 2d at 728 (citing *Prime Prods., Inc. v. SSI Plastics, Inc.*, 97 S.W.3d 631, 635 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)). The presumption of negligence can be rebutted by evidence that the bailee used all ordinary care in handling the property or by showing some other cause of the loss or injury. *Id.*

Texas courts have found a bailor/bailee relationship where a car was damaged as it was being serviced. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 463 (Tex. App.—Dallas 2006, pet. denied). To be entitled to the presumption, however, Plaintiff must show that he delivered the Vehicle to Defendants in good condition. *See, e.g.*, *Crompton Greaves*, 921 F. Supp. 2d at 728 (finding that plaintiff failed to make a prima facie showing under Texas law because it did not provide sufficient evidence that the bailee received the property in good condition).

The Court finds that Plaintiff has not shown he delivered the Vehicle to Defendants in good condition and therefore is not entitled to the presumption of negligence under bailment law. Plaintiff asserts that the Vehicle won "Best in Class at the Concours D'Elegance" car show in October 2010. Dkt. 60-16 (Bernstein Affidavit) ¶ 15. He offers no other evidence on the condition of the Vehicle when Defendants took possession three months later, on January 23, 2011. But Defendants offer evidence that the Vehicle was not in good condition. Snyder testified at deposition that, when Defendants took position of the Vehicle, it was "running rough," meaning

"the engine wasn't firing on all six cylinders" and was "shaking." Dkt. 60-1, Snyder Tr. at 180:15-21. Snyder also testified that Defendants understood they were supposed to find the source of a coolant leak when they took possession of the Vehicle. *Id.* at 202:3-11; Dkt. 60 at 3.

Defendants also submitted evidence that the Vehicle had been damaged before Jeff's Resurrection began work. Dkts. 58-7 at 2-3, 58-8 at 3. This includes a copy of a complaint Plaintiff filed against the Vehicle's insurer in 2011 alleging that in 2004, the Vehicle suffered "extensive damage" when another car hit it in a parking lot and additional damage "caused by a vehicle fire" a few months later. Dkt. 58-7 ¶¶ 3-4. Defendants also filed a report by Nationwide Inspections dated April 6, 2011, which states that the Vehicle "appears to have numerous oil leaks," and that its hoses "and all rubber lines appear brittle due to age and possibly heat related." Dkt. 58-8 at 3.

Considering all evidence of the record, the Court finds that Plaintiff has not made a prima facie showing that the presumption of negligence under bailment law applies. Therefore, the Court considers Plaintiff's claim under standard negligence principles.

### 2. Standard Negligence

To establish negligence under Texas law, a plaintiff must show that a defendant (1) owed the plaintiff a duty of care, (2) breached the duty, and (3) the defendant's breach proximately caused injury to the plaintiff. *IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Liability cannot turn on speculation or conjecture. *Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 936 (Tex. App.—Texarkana 1997, pet. denied). Establishing causation requires a plaintiff to bring forth sufficient facts that the evidence and its logical inferences support the reasonable probability that the defendant's acts or omissions were a substantial factor in bringing about injury. *Id.*

Under Texas law, expert testimony on causation is required where the connection between a defendant's conduct and the plaintiff's harm is beyond the common understanding of a layperson. *Dulces Arbor S. de R.L. de C.V. v. Delgado*, No. 1:10-CV-918-LY, 2012 WL 13029515, at *2

(W.D. Tex. May 4, 2012) (citing *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004)). Highly technical matters of design and engineering require scientific, technical, or specialized knowledge. *Kallassy v. Cirrus Design Corp.*, No. 3:04-CV-0727N, 2006 WL 1489248, at *3 (N.D. Tex. May 30, 2006) (citing *Rangel v. Lapin*, 177 S.W.3d 17, 22 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)), *aff'd*, 265 F. App'x 165 (5th Cir. 2008). Because this case involves the performance of mechanical maintenance not within the common understanding of laypersons, expert testimony is required. *See Hill v. Sonic Momentum JVP, LP*, No. 01-20-00367-CV, 2021 WL 3501540, at *4 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, pet. denied) (stating, in a case involving damage to a vehicle, that Texas courts require expert testimony "in similar circumstances involving mechanical maintenance") (citing *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 91 (Tex. 2004)); *Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 738 (Tex. App.—Amarillo 1999, pet. denied) (holding that performance of mechanical work on turbine aircraft engines is not within the experience of a layperson).

Plaintiff's expert, Jeremy Carpenter, testified that:

- When he visited Jeff's Resurrections on February 17, 2020, he observed "moisture on the inside of the glass of the car, both the windshield and side windows, that's created by a variance in the temperatures." Dkt. 60-8 Carpenter Tr. at 94:12-15.

- The Vehicle "needs to be in a climate-controlled environment" with a "sustained temperature and moisture level." *Id.* at 94:25, 95:1-2.

- If engine components are exposed to coolant, over time the exposure will "rust and deteriorate the metals" and cause the engine to "seiz[e] up and create corrosion in the cylinders." *Id.* at 202:15-16; 205:19-22.

- Four valves on the engine had "rust and degradation of the metal," likely from exposure to water, humidity, or moisture. *Id.* at 219:18-20.

- The bottom side of a cylinder head "had been impeded with moisture." *Id.* at 221:12.

Defendants respond by pointing to the following portions of Carpenter's testimony:

- He could not "break down repair costs necessary as a result of Jeff's Resurrections' actions or inactions versus those necessary as a result of other reasons, such as age." Dkt. 58-10, Carpenter Tr. at 66:19-24.

- "Somewhere along the line, there was – seems to be engine failure. What caused it, who caused it, who was negligent, I do not know." *Id.* at 72:18-20.

- Although the engine "corrosion was caused by water being in the cylinder," Carpenter did not have an opinion on when water entered the cylinder or whether it was caused by Defendants. *Id.* at 91:5-14.

- He did not know whether Jeff's Resurrections caused defects to the exterior paint or interior components. *Id.* at 98:7-12, 103:16-20.

- When asked whether any component of the vehicle "was damaged by Jeff's Resurrections as a result of their workmanship," Carpenter testified: "That, I don't know. That would be an opinionated judgmental observation. There's clearly damage on the car; but how it happened or who cause it, I do not know." *Id.* at 119:20-120:2.

Plaintiff was required to provide expert testimony as to the cause of the damage. Proof of causation cannot turn on speculation or conjecture. *Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex. 1996); *see also Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (affirming trial court's grant of summary judgment for defendant where expert testimony on causation was speculative). Carpenter testified that he cannot form an opinion whether Defendants caused the damage to the Vehicle and, if they did, the extent of the damage for which they are responsible. Dkt. 58-10, Carpenter Tr. at 66:19-24, 72:18-20. He testified that Jeff's Resurrections lacked climate control, but did not identify this as the cause of damage to the Vehicle or address possible alternative causes. This expert testimony is insufficient to defeat to defeat summary judgment. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 752 (5th Cir. 2000) (affirming grant of summary judgment for defendant because expert's testimony making "no attempt" to rule out other causes was not "significantly probative"); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex. 1995) (stating that expert's "failure to rule out other causes of the damage renders his opinion little more than speculation").

Because Defendants have identified Plaintiff's lack of evidence on an essential element and he has failed to come forward with sufficient evidence of causation, the Court finds that Plaintiff has not established a genuine issue of material fact. *See id.* at 754 ("Because none of the plaintiff's inferences of [defendant's] negligence are sufficient to support finding of negligence, they do not suffice to create a genuine issue of material fact that would preclude summary judgment."). Accordingly, the undersigned Magistrate Judge recommends that the District Court grant summary judgment for Defendants on Plaintiff's negligence claim.[3]

## B. Breach of Contract

Next, Plaintiff alleges that Defendants breached the contract by damaging the Vehicle and failing to return two of its parts: the engine control unit and the belly pan. Plaintiff further alleges that he received no value for the $40,000 he paid Defendants under the contract.

Defendants argue that Plaintiff presents no evidence of breach of contract or damages. Defendants also argue that Snyder cannot be held personally liable because he acted within the course and scope of his employment.

In his breach of contract claim, Plaintiff does not differentiate his allegations against Snyder and Jeff's Resurrections. Nor does Plaintiff address Defendants' argument that Snyder cannot be held personally liable for breach of contract, responding only that Snyder can be held personally liable for his tortious conduct. Dkt. 60 at 16. When a party fails to pursue a claim or defense beyond its initial pleading, the claim is deemed abandoned or waived. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that plaintiff abandoned claim when she failed to defend it in response to motion to dismiss); *Arias v. Wells Fargo Bank, N.A.*, 2019 WL

---

[3] Because Plaintiff failed to raise a genuine issue of material fact on his negligence claim, the Court need not address whether Snyder can be held personally liable for any tortious conduct.

2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned."). Therefore, to the extent that Plaintiff seeks to hold Snyder individually liable on his breach of contract claim, Plaintiff has waived that claim, and the Court considers Plaintiff's breach of contract claim against Jeff's Resurrections only.

To prevail on a breach of contract claim, a plaintiff must prove: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result. *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1038 (W.D. Tex. 2020). The causal standard for breach of contract is similar to, but not the same as, proximate cause for a negligence claim. *Cunningham v. Blue Cross Blue Shield of Tex.*, No. 2-06-363-CV, 2008 WL 467399, at *8 (Tex. App.—Fort Worth Feb. 21, 2008, pet. denied). Actual damages are recoverable for breach of contract only if a plaintiff shows that the injury complained of was the natural, probable, and foreseeable consequence of the defendant's breach. *Id.* (citing *Mead v. Johnson Grp.*, 615 S.W.2d 685, 687 (Tex. 1981)).

### 1.  Damage to the Vehicle

Plaintiff alleges that Jeff's Resurrections breached the parties' contract by failing to safeguard the Vehicle and perform the agreed services. But Plaintiff submits no competent summary judgment evidence for the third and fourth elements of his breach of contract claim: breach and causation.

For the element of breach, Plaintiff identifies no acts that constitute a breach of the contract; nor does he identify any work Jeff's Resurrections failed to perform. *See Gonzalez v. Magana*, No. 03-14-00387-CV, 2015 WL 4997868, at *2 (Tex. App.—Austin Aug. 18, 2015, pet. denied) (granting summary judgment where plaintiff offered no evidence how defendant failed to provide services required by alleged oral contract). Plaintiff's expert testified that, in his opinion, Plaintiff

did not receive $39,904 worth of work on the Vehicle based on "the state of the car when . . . we picked it up." Dkt. 60-8, Carpenter Tr. at 196:8-19. Plaintiff offers no other evidence explaining the basis of Carpenter's assessment, such as what services Jeff's Resurrections failed to perform or whether the services rendered failed to meet a standard required by the contract. Plaintiff therefore offers no evidence of Defendants' breach.

As for the fourth element, causation, Carpenter did not opine on the cause of the damage to the Vehicle. To raise a genuine issue of material fact, Plaintiff must provide some evidence that his injury was the natural, probable, and foreseeable consequence of the Jeff's Resurrections' breach. Plaintiff has not done so. For these reasons, Plaintiff has presented no evidence raising a genuine issue of material fact as to whether Defendants breached the contract by damaging the Vehicle, and the Court recommends that the District Court grant summary judgment to Defendant Jeff's Resurrections on this claim.

### 2.  Failure to Return Parts of the Vehicle

Plaintiff supports his breach of contract claim based on Jeff's Resurrections' failure to return the Vehicle's electric control unit and belly pan with his deposition testimony. Plaintiff testified that, on the day Jeff's Resurrections took possession of the Vehicle, one of Plaintiff's sons brought the belly pan to Jeff's Resurrections' trailer and Snyder strapped it into the trailer. Bernstein Tr. 60-2 at 39:18-25. Plaintiff also provides an inventory of parts made before he retook possession of the Vehicle. Dkt. 60-12 (Inventory of XJ 220 Parts). The inventory does not include the belly pan.

Defendants respond by pointing to Plaintiff's testimony that the Vehicle's previous belly pan was lost and Plaintiff did not personally handle the purchase of the replacement pan. *Id.* at 41:19-23, 42:16-17.

While a court may consider the sufficiency of a plaintiff's evidence on summary judgment, it may not weigh the evidence or make credibility determinations. *See Boudreaux v. Swift Transp.*

*Co.*, 402 F.3d 536, 544 (5th Cir. 2005) (stating that the court may decide a motion for summary judgment based on weakness of a plaintiff's evidence but may not discount the plaintiff's testimony based on credibility concerns). The Court finds Plaintiff's testimony sufficient to create a genuine issue of material fact as to whether Jeff's Resurrections breached the contract by failing to return the belly pan.

Defendants' contention that there is no credible evidence supporting the damages element does not defeat this claim. A property owner is qualified to testify to the value of his property even if he is not an expert and would not be qualified to testify to the value of other property. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852-53 (Tex. 2011). Plaintiff has testified that he purchased the belly pan for $15,000 to $20,000 before Defendants took possession of the Vehicle. Dkt. 60-2, Bernstein Tr. at 41:12-16.

Plaintiff offers no evidence, however, that Jeff's Resurrections retained possession of the engine control unit. Defendants point to Plaintiff's inventory of parts, which shows that the engine control unit was located "in box in passenger floorboard" on February 18, 2020, just before Plaintiff retook possession of the Vehicle. Dkt. 60-12 at 1, 20. Because Plaintiff offers no evidence that Jeff's Resurrections is still in possession of the engine control unit, he has not raised a genuine issue of material fact that Defendants breached the parties' contract by failing to return the engine control unit.

In sum, for the foregoing reasons, the undersigned Magistrate Judge recommends that the District Court grant summary judgment to Defendants on Plaintiff's breach of contract claim for failure to return the engine control unit, but deny summary judgment on Plaintiff's breach of contract claim for failure to return the belly pan.

## C.  Replevin

Finally, Defendants contend that Plaintiff's replevin claim fails because Plaintiff offers no evidence that they still have possession of the engine control unit or the belly pan. Plaintiff does not address his claim for replevin in his response and therefore has abandoned it. *See Black*, 461 F.3d at 588 n.1; *Arias*, 2019 WL 2770160, at *2.

Even if Plaintiff had not abandoned his replevin claim, it would fail as a matter of law. Rule 64 makes replevin and other prejudgment remedies available "under the law of the state where the court is located." The Court therefore construes Plaintiff's claim for replevin pursuant to Arizona law (A.R.S. §§ 12-1301 through 12-1314) under Texas law, which provides that "replevin is an action for the repossession of personal property wrongfully taken or detained by the defendant, whereby the plaintiff gives security for and holds the property until the court decides who owns it." *Acord v. Young Again Prods., Inc.*, No. H-11-3591, 2013 WL 754144, at *14 (S.D. Tex. Feb. 7, 2013) (quoting *Simmonds v. TDCJ*, 2010 WL 654498, at *8 (Tex. App.—Waco 2010, no pet.)), *R. & R. adopted*, No. H-11-3591, 2013 WL 754140 (S.D. Tex. Feb. 27, 2013).

Defendants have returned the Vehicle to Plaintiff, *see* Dkt. 60 at 8-9, and there is no dispute over who owns the missing parts. Nor does the record show that Plaintiff complied with the procedure for issuance of a writ of replevin. *See id.* (stating that a writ of replevin "requires the Plaintiffs to give security for the property whose return they seek, and such a cause of action is not sustainable in the absence of security") (quoting *Simmonds*, 2010 WL 654498, at * 8). For these additional reasons, Plaintiff's replevin claim fails as a matter of law, and the Court recommends that the District Court grant Defendants' motion for summary judgment as to that claim.

## IV.   Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants Jeffrey Snyder and Jeff's Resurrections, LLC's Motion for Summary Judgment (Dkt. 58). The Court recommends that the District Court **DENY** the Motion for Summary Judgment as to the breach of contract claim against Jeff's Resurrections concerning failure to return the belly pan, **GRANT** summary judgment to Defendants on all of Plaintiff's other claims, and **DISMISS** Plaintiff's remaining claims **with prejudice**.

**IT IS ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 18, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

16